IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

JUDITH BARRETT,

    *Plaintiff*,

v.

                           Civil Action No. ELH-11-2835

BIO-MEDICAL APPLICATIONS OF
MARYLAND, INC., d/b/a
FRESENIUS MEDICAL CARE,

    *Defendant*.

## MEMORANDUM OPINION

Judith Barrett, plaintiff, sued her former employer, Bio-Medical Applications of Maryland, Inc., d/b/a Fresenius Medical Care ("FMC"), defendant, alleging violations of federal employment discrimination law.[1]  Count I alleges discrimination on the basis of disability, in violation of Title I of the Americans with Disabilities Act ("ADA"), 42 U.S.C. §§ 12101, *et seq.* Count II asserts discrimination on the basis of age, in violation of the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. §§ 621 *et seq.*  Count III claims discrimination on the basis of sex, in violation of Title VII of the Civil Rights Act of 1964, codified as amended at 42 U.S.C. §§ 2000e *et seq.*[2] Count IV presents a claim of unlawful retaliation, also under Title VII.

---

[1] The operative pleading is the Amended Complaint (ECF 9), filed on February 8, 2012. Hereafter, I will refer to it as the "Complaint" unless clarity otherwise requires, and will refer to the original Complaint (ECF 1) as the "Original Complaint."  Plaintiff submitted several exhibits with her Original Complaint.  She expressly referred to the same exhibits in the Amended Complaint, although she did not resubmit the exhibits.  In the Amended Complaint, plaintiff named nine defendants, all of which were business entities whose names contained the word "Fresenius."  On March 21, 2012, the Court granted the parties' consent motion to substitute FMC as the sole defendant. *See* ECF 23 & 24.

[2] In Count III, plaintiff also alleges discrimination on the basis of "marital status," but Title VII prohibits discrimination only on the basis of "race, color, religion, sex, or national

*See* 42 U.S.C. § 2000e-3.

FMC has filed a pre-discovery "Motion to Dismiss or, In the Alternative, for Summary Judgment" (ECF 27) (together with its supporting memorandum, ECF 27-1, "Motion"), supported by numerous exhibits. The Motion has been fully briefed,[3] and the Court now rules pursuant to Local Rule 105.6, as no hearing is necessary. For the reasons that follow, the Motion will be granted. In particular, I will grant summary judgment in favor of defendant as to all counts.

## Factual Background[4]

FMC is a New York corporation that operates medical care centers in Maryland, including, *inter alia*, dialysis clinics. Complaint ¶ 4; Motion at 1. On March 6, 2006, plaintiff was hired by FMC as a social worker at its Rotunda and Greater Baltimore locations. Complaint ¶ 5. According to FMC, its social workers' job responsibilities entail, *inter alia*,

> developing and maintaining positive relationships through effective communication with all customers; work with patients and families to overcome barriers to effective treatment; work collaboratively with the Clinical Manager to maintain information regarding new admissions; and complete financial assessments with patients and determine eligibility for Medicare and Medicaid.

Motion at 2; *see also* Ex.4 to Motion (ECF 27-5) (FMC job description for "Social Worker").

---

origin." 42 U.S.C. § 2000e-2(a)(1). "Marital status," as such, is not a protected classification under Title VII. *See, e.g.*, *Singh v. N.Y State Dept. of Taxation & Finance*, ___ F. Supp. 2d ___, 2012 WL 5988547, at *16 n.3 (W.D.N.Y. Nov. 29, 2012); *Gaub v. Prof'l Hosp. Supply, Inc.*, 845 F. Supp. 2d 1118, 1133 (D. Idaho 2012) ("Title VII does not protect from discrimination on account of one's marital status.") To the extent that Count III alleges discrimination under Title VII on the basis of marital status, it will be dismissed, with prejudice.

[3] Ms. Barrett filed an Opposition (ECF 28), and FMC filed a Reply (ECF 32).

[4] As I explain, *infra*, the Motion will be treated as a motion for summary judgment. Accordingly, this factual background includes factual matter presented by defendant. However, all of the evidence is construed in the light most favorable to plaintiff.

Born in 1956, plaintiff was 50 years of age at the time she was hired by FMC.  *See* Complaint ¶ 3; *see also* Ex.C to Complaint at 1 (ECF 1-1 at 13).  According to plaintiff, she is disabled within the meaning of the ADA because she is "substantially limited in the major life activity of walking."  Complaint ¶ 38.  She "has frequently used a cane and has received a handicapped bus card."  *Id.*  In the alternative, plaintiff contends that, even if she is not actually disabled, she was "regarded as disabled" by FMC, within the meaning of the ADA, because of the same limitations with respect to walking that are demonstrated by her cane and handicapped bus card.  *Id.* ¶ 49.  Moreover, she contends that she was "regarded as disabled" for the additional reason that she has "visible scars on her throat" and uses "false teeth," which are the results of "surgery for cancer," and which allegedly cause her to be regarded as "substantially limited in the major life activity of breathing."   *Id.* ¶ 60.

Defendant notes that plaintiff had around two years of social work experience prior to her employment with FMC, and was licensed by the State of Maryland as a Licensed Graduate Social Worker ("LGSW").  Motion at 2; *see also* Ex.1 to Motion (ECF 27-2) (plaintiff's résumé).  Under Maryland law, an LGSW is authorized to practice social work under the supervision of another social worker who is licensed under one of several other more comprehensive levels of licensure.  *See* Md. Code (2009 Repl. Vol., 2012 Supp.), § 19-307(c)(2) of the Health Occupations Article ("H.O.").

Initially, plaintiff was assigned work hours of approximately 30 hours per week.  Complaint ¶ 5.  In November 2006, plaintiff's working hours were increased to 40 hours per week.  *Id.* ¶ 6.

In early 2009, FMC announced that it would "phase-in the position of Financial Coordinator," whose job was "to assist patients with financial arrangements related to their care," a task which was formerly accomplished by social workers.  Motion at 2-3.  Because of the reduction in social workers' job responsibilities in light of the creation of the new Financial Coordinator position, FMC determined that its social workers could ideally serve 140 patients in a 40-hour work week.

Defendant alleges that, because plaintiff was handling approximately 131 patients at her locations, her hours were reduced to 36 per week.  *Id.* at 3;  *see also* Complaint ¶ 7.  However, defendant has submitted unrebutted documentary evidence, drawn from its payroll records, that plaintiff's compensation was not affected by this reduction in her hours, because FMC "fail[ed] to update the payroll system" to account for plaintiff's reduction in assigned hours.  Motion at 3; *see* Ex.7 to Motion (ECF 27-8).

In March 2009, FMC hired Brian Nelson, a 40-year-old man, to fill a vacancy at FMC's Pikesville and Dundalk locations that was created by another social worker's resignation. Motion at 3; Complaint ¶ 8.  According to FMC, it advertised this vacancy both internally and externally, and none of its employees, including plaintiff, expressed an interest in the position. Motion at 3.  Nelson had approximately eleven years of experience, of which ten were in renal specialty, and was hired to work 40 hours per week.  Motion at 4; Complaint ¶ 8.  He is licensed as a Licensed Certified Social Worker–Clinical ("LCSW-C").  Therefore, unlike plaintiff, he "does not require any supervision."  Motion at 4.  *See also* H.O. § 19-307(c).

In her annual review for the period from March 2008 to March 2009, which was completed in early June 2009, Ms. Barrett received high marks, including ratings of

"outstanding" or "exceeds standards" in all areas of assessment.  *See* Ex.N to Complaint (ECF 1-1 at 50-53).  Her total score for her 2009 annual review was 930/1000.  *Id.*

Through the summer and fall of 2009, plaintiff complained periodically to FMC management that she was assigned fewer work hours than Mr. Nelson, despite the fact that the two social workers carried equivalent case loads.  *See, e.g.*, Ex.14 to Motion (ECF 27-15) (email chain between plaintiff and management in September 2009).  These concerns came to a head at a meeting on October 5, 2009, between Ms. Barrett; Carol Miller, FMC's Director of Operations; and Max Nwachinemere, FMC's Operations Manager.  *See* Complaint ¶ 11.  Ms. Miller and Mr. Nwachinemere informed plaintiff that, in order to increase her hours, she would need to take on hours at FMC's Rosedale clinic and cease working at the Greater Baltimore location, while continuing to work at the Rotunda location.  Plaintiff resisted working at the Rosedale location because she insisted it would result in a longer commute for her by bus.  *See, e.g.*, Ex.C to Complaint at 2 (ECF 1-1 at 14).[5]

At the meeting on October 5, 2009, Ms. Miller and Mr. Nwachinemere also raised with plaintiff several complaints regarding plaintiff that management had received from the Clinical Managers at plaintiff's two locations.  *See* Motion at 4-5; Ex.10 & 11 to Motion (ECF 27-11 & 27-12).  According to defendant, FMC's Employee Relations Manager recommended prior to that meeting that plaintiff be placed on a Developmental Action Plan ("DAP"), but plaintiff's placement on the plan was deferred based upon plaintiff's "assurances that her performance would improve."  Motion at 5; *see* Ex.12 to Motion (ECF 27-13).

_____

[5] In its Motion, defendant contends that FMC's Pikesville location, for which plaintiff expressed a preference, was actually nearly five miles further from plaintiff's home than the Rosedale location, and would take five minutes longer to reach by public transportation.  *See* Motion at 6 n.3.  However, these allegations are not supported by documentary evidence.

Although defendant contends that plaintiff "openly worked to frustrate the transition process," Motion at 7; *see also* Ex.21 to Motion (ECF 27-22), plaintiff agreed to move to the Rosedale clinic (while keeping her hours at the Rotunda clinic). She transitioned to Rosedale in November 2009, and her hours were increased to 38 hours per week. *See* Complaint ¶ 7.

Nevertheless, on either October 4 or 15, 2009,[6] plaintiff filed a complaint with the Maryland Commission on Human Relations ("MCHR")[7] alleging retaliation, as well as employment discrimination based upon sex, age, disability, and marital status. Complaint ¶ 10, Exh C. Additionally, plaintiff alleges that she filed three complaints with FMC's Human Resources department, on October 9, 2009, October 12, 2009, and November 2, 2009, respectively. Complaint ¶¶ 13-16. Ms. Barrett claims that she received no response to the substantive issues of her complaints. *Id.*

Plaintiff was placed on another DAP in April 2010. Motion at 6-7, Exhs 18-21. On April 20, 2010, plaintiff received a score of 490/1000 on her annual performance review, which was significantly lower than her previous year's rating of 930/1000. *See* Complaint ¶ 26; Ex.N to Complaint (ECF 1-1 at 48-49). Plaintiff's employment was terminated on August 13, 2010.[8] Complaint ¶ 32; Motion at 8.

---

[6] It is unclear from the pleadings which date is correct. Plaintiff alleges that the complaint was filed on October 4, 2009, Complaint ¶ 10, yet defendant alleges that the complaint was filed on October 15, 2009. *See* Motion at 6; Ex.17 to Motion (ECF 27-18). Given that plaintiff's own Exhibit C, attached to the Complaint, includes the date of filing of the complaint as 10/15/09 next to plaintiff's signature, I will assume that this date is the correct one. *See* Complaint ¶ 10; Ex.C to Complaint (ECF 1-1 at 14).

[7] Following the events alleged in this case, the MCHR was renamed the Maryland Commission on Civil Rights. *See* 2011 Md. Laws, ch. 580.

[8] Plaintiff claims that "the ostensible cause" for her termination was "a failure to improve on the corrective action plan." Complaint ¶ 32. I will present defendant's proffered reasons for

On approximately December 20, 2010, the MCHR issued a finding that indicated that there was no probable cause to believe that defendant had discriminated against plaintiff on the basis of "her sex, age (53), perceived disability and in retaliation for opposing discriminatory activity in the workplace."   Complaint ¶ 35; Motion at 8, Exh 6.   Plaintiff then requested a review of this decision by the Equal Employment Opportunity Commission ("EEOC"). Complaint ¶ 35, Exh T; Motion at 8, Exh 25.   On July 25, 2011, the EEOC issued to plaintiff a Dismissal and Notice of Rights, which authorized plaintiff to file suit.   Complaint ¶ 36, Exh U; Motion at 8, Exh 26.   She timely initiated this action on October 3, 2011.

Additional facts will be included in the Discussion.

## Standard of Review

FMC's Motion is styled as a Rule 12(b)(6) motion to dismiss or, alternatively, as a motion for summary judgment under Rule 56.   The Motion is supported by copious documentary exhibits that are extrinsic to the Complaint.   A motion presented in this manner "implicates the court's discretion under Rule 12(d) of the Federal Rules of Civil Procedure."   *Kensington Vol. Fire Dept., Inc. v. Montgomery County*, 788 F. Supp. 2d 431, 436-37 (D. Md. 2011), *aff'd*, 684 F.3d 462 (4th Cir. 2012).

Ordinarily, on a motion to dismiss under Rule 12(b)(6), a court "may not consider any documents that are outside of the complaint, or not expressly incorporated therein . . . ." *Clatterbuck v. City of Charlottesville*, ___ F.3d ___, No. 12-1149, slip op. at 13, 2013 WL 632950 (4th Cir. Feb. 21, 2013), except for documents that are "integral to the complaint and authentic."   *Philips v. Pitt County Memorial Hosp.*, 572 F.3d 176, 180 (4th Cir. 2009).   But, Rule

---

terminating plaintiff's employment in more detail in the Discussion.

12(d) permits a court to consider "matters outside the pleadings" in connection with a Rule 12(b)(6) motion.  Fed. R. Civ. P. 12(d).  If the court does so, however, it is required to "treat [the motion] as one for summary judgment under Rule 56." *Id.*[9]

Under Rule 12(d), a district judge has "complete discretion to determine whether or not to accept the submission of any material beyond the pleadings that is offered in conjunction with a Rule 12(b)(6) motion and rely on it, thereby converting the motion [to one for summary judgment], or to reject it or simply not consider it."  5C WRIGHT & MILLER, FEDERAL PRACTICE & PROCEDURE § 1366, at 159 (3d ed. 2004, 2012 Supp.).  However, discretion "should be exercised with great caution and attention to the parties' procedural rights." *Id.* at 149.  "When the extra-pleading material is comprehensive and will enable a rational determination of a summary judgment motion in accordance with the standard set forth in Rule 56, the district court is likely to accept it." *Id.* at 165.  In contrast, when the extraneous material is "scanty, incomplete, or inconclusive, the district court probably will reject it." *Id.* at 165-66.

A court's exercise of discretion under Rule 12(d) should also be informed by the consideration that a grant of summary judgment before discovery is the exception rather than the

---

[9] Rule 12(d) also provides: "All parties must be given a reasonable opportunity to present all the material that is pertinent to the motion."  When, as here, the movant expressly captions its motion "in the alternative" as one for summary judgment, and submits matters outside the pleadings for the court's consideration, the parties are deemed to be on notice that conversion under Rule 12(d) may occur; the court "does not have an obligation to notify parties of the obvious." *Laughlin v. Metro. Wash. Airports Auth.*, 149 F.3d 253, 261 (4th Cir. 1998).

In contrast, a court may not convert a motion to dismiss to one for summary judgment *sua sponte*, unless it gives notice to the parties that it will do so. *See Laughlin*, 149 F.3d at 261 (stating that a district court "clearly has an obligation to notify parties regarding any court-instituted changes" in the posture of a motion, including conversion under Rule 12(d)); *Finley Lines Joint Protective Bd. Unit 200 v. Norfolk So. Corp.*, 109 F.3d 993, 997 (4th Cir. 1997) ("[A] Rule 12(b)(6) motion to dismiss supported by extraneous materials cannot be regarded as one for summary judgment until the district court acts to convert the motion by indicating that it will not exclude from its consideration of the motion the supporting extraneous materials.").

rule: summary judgment is ordinarily inappropriate "where the parties have not had an opportunity for reasonable discovery." *E.I. du Pont de Nemours v. Kolon Indus., Inc.*, 637 F.3d 435, 448-49 (4th Cir. 2011). Thus, a court should not apply Rule 12(d) to resolve a pre-discovery motion under a summary judgment standard unless consideration of extrinsic material "is likely to facilitate the disposition of the action," and "discovery prior to the utilization of the summary judgment procedure" appears unnecessary. 5C WRIGHT & MILLER § 1366, at 165-67.

Nevertheless, a "party opposing summary judgment 'cannot complain that summary judgment was granted without discovery unless that party has made an attempt to oppose the motion on the grounds that more time was needed for discovery.'" *Harrods Ltd. v. Sixty Internet Domain Names*, 302 F.3d 214, 244 (4th Cir. 2002) (quoting *Evans v. Techs. Applications & Serv. Co.*, 80 F.3d 954, 961 (4th Cir. 1996)). To raise adequately the issue that discovery is needed, the non-movant typically must file an affidavit or declaration pursuant to Rule 56(d) (formerly Rule 56(f)), explaining why, "for specified reasons, it cannot present facts essential to justify its opposition," without needed discovery. Fed. R. Civ. P. 56(d); *see Harrods*, 302 F.3d at 244-45 (discussing affidavit requirement of former Rule 56(f)).

Notably, "'Rule 56(d) affidavits cannot simply demand discovery for the sake of discovery.'" *Hamilton v. Mayor & City Council of Baltimore*, 807 F. Supp. 2d 331, 342 (D. Md. 2011) (quoting *Young v. UPS*, No. DKC-08-2586, 2011 WL 665321, at *20 (D. Md. Feb. 14, 2011)). "Rather, to justify a denial of summary judgment on the grounds that additional discovery is necessary, the facts identified in a Rule 56 affidavit must be 'essential to [the] opposition.'" *Scott v. Nuvell Fin. Servs., LLC*, 789 F. Supp. 2d 637, 641 (D. Md. 2011) (alteration in original) (citation omitted). A non-moving party's Rule 56(d) request for

additional discovery is properly denied "where the additional evidence sought for discovery would not have by itself created a genuine issue of material fact sufficient to defeat summary judgment." *Strag v. Bd. of Trs., Craven Cmty. Coll.*, 55 F.3d 943, 954 (4th Cir. 1995); *see Amirmokri v. Abraham*, 437 F. Supp. 2d 414, 420 (D. Md. 2006), *aff'd*, 266 F. App'x 274 (4th Cir.), *cert. denied*, 555 U.S. 885 (2008).

To be sure, the Fourth Circuit has "not always insisted" on a Rule 56(d) affidavit. *Harrods*, 302 F.3d at 244. Although the Fourth Circuit places "'great weight'" on the Rule 56(d) affidavit, failure to file an affidavit may be excused "if the nonmoving party has adequately informed the district court that the motion is premature and that more discovery is necessary" and the "nonmoving party's objections before the district court 'served as the functional equivalent of an affidavit.'" *Id.* at 244-45 (internal citations omitted). Moreover, a non-moving party's failure to file a Rule 56(d) affidavit cannot obligate a court to issue a summary judgment ruling that is obviously premature. *See Sager v. Hous. Comm'n of Anne Arundel County*, 855 F. Supp. 2d 524, 543 n.26 (D. Md. 2012). But, if a non-moving party believes that further discovery is necessary before consideration of summary judgment, the party fails to file a Rule 56(d) affidavit at its peril, because "the failure to file an affidavit . . . is itself sufficient grounds to reject a claim that the opportunity for discovery was inadequate." *Harrods*, 302 F.3d at 244 (some internal quotation marks omitted).

In this case, only some of defendant's arguments require consideration of the comprehensive exhibits that FMC has submitted. Although plaintiff attached exhibits to her original complaint, they do not controvert defendant's submissions or create any dispute of material fact. Moreover, plaintiff has not submitted a Rule 56(d) affidavit, nor has she so much

as hinted at a need for discovery.  Accordingly, I conclude that, to the extent FMC's Motion depends on matter outside the pleadings, it is appropriate to consider it under a summary judgment standard, as authorized by Rule 12(d), despite the fact that no discovery has occurred.

Summary judgment is governed by Rule 56 of the Federal Rules of Civil Procedure.  It provides, in part, that a court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact, and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  A fact is "material" if it "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

In resolving a summary judgment motion, the court must view all of the facts, including reasonable inferences to be drawn from them, in the light most favorable to the non-moving party.  *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *see also Scott v. Harris*, 550 U.S. 372, 380 (2007); *Dennis v. Columbia Colleton Med. Ctr., Inc.*, 290 F.3d 639, 645 (4th Cir. 2002).  "A party opposing a properly supported motion for summary judgment 'may not rest upon the mere allegations or denials of [its] pleadings,' but rather must 'set forth specific facts'" showing that there is a triable issue.  *Bouchat v. Baltimore Ravens Football Club, Inc.*, 346 F.3d 514, 522 (4th Cir. 2003) (quoting former Fed. R. Civ. P. 56(e)), *cert. denied*, 541 U.S. 1042 (2004).  *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322-24 (1986).  The "judge's function" in reviewing a motion for summary judgment is not "to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Liberty Lobby*, 477 U.S. at 249.  If "the evidence is such that a reasonable jury could return a verdict for the nonmoving party," there is a dispute of material fact that precludes summary judgment. *Id.* at 248.

As indicated, some of defendant's arguments do not depend on matter extrinsic to the Complaint. Those contentions are properly considered under a Rule 12(b)(6) standard. In order to survive a Rule 12(b)(6) motion, a complaint must satisfy the pleading standard articulated in Rule 8: it must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The purpose of the Rule is to provide the defendant with "fair notice" of the claim and the "grounds" for entitlement to relief. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555-56 n.3 (2007). To satisfy the minimal requirements of Rule 8(a)(2), the complaint merely must contain factual allegations sufficient to "state a claim to relief that is plausible on its face." *Id.* at 570. In other words, it must set forth "enough factual matter (taken as true) to suggest" a cognizable cause of action. *Id.* at 556.

In reviewing a Rule 12(b)(6) motion, a court "'must accept as true all of the factual allegations contained in the complaint,'" and must "'draw all reasonable inferences [from those facts] in favor of the plaintiff.'" *E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 440 (4th Cir. 2011) (citations omitted). If the "well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct," the complaint has not shown that "'the pleader is entitled to relief.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009) (citation omitted). The complaint must contain sufficient factual detail to "nudge[ ] [the plaintiff's] claims across the line from conceivable to plausible." *Twombly*, 550 U.S. at 570; *accord Iqbal*, 556 U.S. at 680.

### Discussion

FMC advances five arguments in support of its Motion. First, as to plaintiff's ADA claims, FMC contends that plaintiff fails to establish that she has a "disability" or was "regarded as" having a disability, within the meaning of the ADA. Second, with respect to plaintiff's

ADEA and Title VII claims, defendant asserts that plaintiff cannot establish a prima facie case of liability for employment discrimination under the *McDonnell Douglas* burden-shifting framework.  Third, defendant maintains that, even if plaintiff could establish a prima facie case, it is entitled to judgment as to all three of plaintiff's discrimination claims (*i.e.* Counts I, II, and III, under the ADA, ADEA, and Title VII), to the extent that they allege wrongful termination, because FMC has articulated a legitimate basis for terminating plaintiff's employment, and plaintiff fails to demonstrate that its stated basis is a pretext.  Fourth, defendant argues that plaintiff fails to plead sufficiently a claim of retaliation in Count IV.  Finally, to the extent that Counts I, II, and III purport to allege a hostile work environment, defendant insists that they fail to state a claim.  I will address these arguments in turn.

A.  Disabled or Regarded as Disabled

Count I of plaintiff's Complaint arises under Title I of the ADA, which prohibits discrimination "against a qualified individual on the basis of disability in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment."  42 U.S.C. § 12112(a).  A "qualified individual" is defined as a person who, "with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires."  *Id.* § 12111(8).  In other words, the term includes "an 'individual with a disability' who, with 'reasonable accommodation,' can perform the essential functions of the job."  *U.S. Airways, Inc. v. Barnett*, 535 U.S. 391, 393 (2002) (citation omitted).

The ADA's definition of "disability" is set forth in 42 U.S.C. § 12102.  Its primary meaning is "a physical or mental impairment that substantially limits one or more major life

- 13 -

activities of [an] individual."   *Id.* § 12102(1)(A).   "Major life activities" include, but are not limited to, "caring for oneself, performing manual tasks, seeing, hearing, eating, sleeping, *walking*, standing, lifting, bending, speaking, *breathing*, learning, reading, concentrating, thinking, communicating, and working," *id.* § 12102(2)(A) (emphasis added), as well as "the operation of . . . major bodily function[s]."   *Id.* § 12102(2)(B).   Even if a person does not have a disability under the primary definition, the person will still be considered to have a disability if he or she has "a record of such an impairment," *id.* § 12102(1)(B), or is "regarded as having such an impairment." *Id.* § 12102(1)(C).

As noted, plaintiff contends that she is disabled because she is substantially limited in the major life activity of walking, and that she was also "regarded as" disabled due to that same apparent limitation, as well as the apparent limitation in the major life activity of breathing.   In the Complaint, the facts supporting plaintiff's claim of having a disability or being so regarded are that she "has frequently used a cane," has "a handicapped bus card," has "visible scars on her throat," and "uses false teeth."   Complaint ¶¶ 38, 49, 60.   Due to these real and perceived disabilities, she claims that she was subjected to a hostile work environment, negative treatment, and ultimately, termination, in violation of the ADA.

Contending that the "[c]ase law is clear," defendant maintains that the "simple use of a cane on occasion, is not enough to establish a disability under the ADA."   Motion at 13. Moreover, defendant argues that Ms. Barrett's possession of a handicapped bus pass adds nothing to the analysis and that she advances no allegations that anyone at FMC actually perceived her as having a disability.   *See* Reply at 3-6.   Defendant relies on the Supreme Court's statement in *Toyota Motor Manufacturing, Kentucky, Inc. v. Williams*, 534 U.S. 184 (2002), that

the components of the ADA's definition of disability, requiring a "substantial[ ] limit[ation]" to a "major life activit[y]," 42 U.S.C. § 12102(1)(A), must "be interpreted strictly to create a demanding standard for qualifying as disabled." *Toyota*, 534 U.S. at 197.

In addition, FMC cites numerous decisions that have held that mere use of a cane does not establish "disability" for purposes of the ADA. *See, e.g.*, *McDonald v. Coldwell Banker*, 543 F.3d 498, 505 n.6 (9th Cir. 2008) (stating that the use of a cane, "alone, does not establish that a 'major life activity' has been limited"); *Wood v. Crown Redi-Mix, Inc.*, 339 F.3d 682, 685 (8th Cir. 2003) (holding that, where employee could not walk more than one-quarter of a mile without resting and walked with a cane on occasion, his ability to walk was only moderately limited and the restriction was not substantial).[10]  According to defendant, Ms. Barrett fails to allege that she was "prohibited in any way from getting to and from work every day or from counseling patients due to her use of a cane."  Motion at 13.

Defendant's argument appears to be directed entirely at the adequacy of plaintiff's pleading, and does not rely on any of the evidence submitted in support of the Motion. Accordingly, it is unnecessary to consider this argument under a Rule 56 standard, rather than a Rule 12(b)(6) standard.  In response to defendant's argument, Ms. Barrett seeks to distinguish the cases cited by defendant, but she has not challenged the legal standard that those cases articulate.

---

[10] In addition to the above-cited reported appellate decisions, defendant cites several unreported district court decisions that are consistent with the reasoning of the appellate case law.  *See Morales v. Ga. Dept. of Human Res.*, 2010 U.S. Dist. Lexis 118154, at *18 (D. Ga. Nov. 18, 2010); *Hayes v. Potter*, 2008 U.S. Dist. Lexis 56375, at *3 (W.D. Ky. July 24, 2008); *Mitchell v. Girl Scouts of U.S.*, 2003 U.S. Dist. Lexis 20570, at *6 (S.D.N.Y. Nov. 17, 2003).

Neither party has addressed the impact on the cited case law of the enactment of the ADA Amendments Act of 2008 ("ADAAA"), Pub. L. No. 110-325, 122 Stat. 3553 (2008).  The ADAAA "expand[ed] the category of individuals who fall within [the] ambit" of the ADA's definition of disability.  *Young v. United Parcel Serv., Inc.*, ___ F.3d ___, No. 11-2078, slip op. at 9 n.7, 2013 WL 93132 (4th Cir. Jan. 9, 2013).  Congress enacted the ADAAA with the express purpose of legislatively overruling the Supreme Court's decisions in *Toyota*, as well as its predecessor, *Sutton v. United Air Lines, Inc.*, 527 U.S. 471 (1999), and their progeny.[11]  *See generally* ADAAA § 2(a)-(b); *see also id.* § 2(b)(4) (stating that one of the purposes of the ADAAA is "to reject the standards enunciated by the Supreme Court in *Toyota Motor Manufacturing, Kentucky, Inc. v. Williams*, 534 U.S. 184 (2002), that the terms 'substantially' and 'major' in the definition of disability under the ADA 'need to be interpreted strictly to create a demanding standard for qualifying as disabled'").

To that end, the ADA, as amended by the ADAAA, requires that the "definition of disability in [the ADA] shall be construed in favor of broad coverage," 42 U.S.C. § 12102(4)(A), and provides specifically that the "determination of whether an impairment substantially limits a major life activity shall be made without regard to the ameliorative effects of mitigating measures such as . . . equipment, or . . . mobility devices . . . ." *Id.* § 12102(4)(E)(i).  "In effect, these provisions require courts to look at a plaintiff's impairment in a hypothetical state where it remains untreated." *Lloyd v. Hous. Auth. of City of Montgomery*, 857 F. Supp. 2d 1252, 1263 (M.D. Ala. 2012).  Thus, under the ADAAA, the fact that plaintiff was able, according to

---

[11] In *Sutton*, the Court held that, "if a person is taking measures to correct for, or mitigate, a physical or mental impairment, the effects of those measures—both positive and negative— must be taken into account when judging whether that person is 'substantially limited' in a major life activity and thus 'disabled' under the [ADA]." *Sutton*, 527 U.S. at 482.

defendant, to travel to and from work and perform the functions of her job without substantial limitation, through the use of a cane, does not resolve whether she has a "disability" within the meaning of the ADA. The relevant question is whether plaintiff's mobility would be substantially limited *without* a cane.

The ADAAA's effective date was January 1, 2009. *See* ADAAA § 8. The Fourth Circuit, joining the unanimous conclusion of eight other circuits, has determined that the ADAAA does not apply retroactively to acts of alleged discrimination that occurred before its effective date. *See Reynolds v. Am. Nat'l Red Cross*, 701 F.3d 143, 150-52 (4th Cir. 2012). Although plaintiff was hired in 2006, her employment was terminated in August 2010, *see* Complaint ¶ 32, and all of the incidents comprising her allegations of discrimination occurred in 2009 and 2010. *See id.* ¶¶ 7-31. Therefore, this case is governed by the ADAAA.

Virtually all of the case law cited by defendant for the proposition that plaintiff fails to demonstrate that she has or is perceived as having a disability predates the enactment of the ADAAA, and the continued validity of such cases is suspect.[12] Similarly, defendant cited a provision of the EEOC's interpretive regulations concerning the ADA for the proposition that a "person is 'substantially limited' in a major life activity if (1) she is unable to perform the activity, or (2) compared to the average person, she is '[s]ignificantly restricted as to the condition, manner or duration' under which she can perform the activity." Motion at 12-13 (quoting 29 C.F.R. § 1630.2(j)(1) (2010)). However, the applicable regulation was amended in

---

[12] One of the unreported district court decisions on which defendant relies, *Morales v. Ga. Dept. of Human Res.*, 2010 U.S. Dist. Lexis 118154 (D. Ga. Nov. 18, 2010), was decided after the ADAAA's effective date. However, *Morales* does not cite the ADAAA and concerns allegations of unlawful termination that all occurred before the ADAAA's effective date. *See id.*, 2010 U.S. Dist. Lexis 118154, at *1 ("Plaintiff's employment was terminated on September 16, 2008.").

2011, in order to conform with the ADAAA.  *See* 76 Fed. Reg. 16999 (Mar. 25, 2011).  It now states, in pertinent part:

> (i) The term "substantially limits" shall be construed broadly in favor of expansive coverage, to the maximum extent permitted by the terms of the ADA. *"Substantially limits" is not meant to be a demanding standard.*
>
> (ii) An impairment is a disability within the meaning of this section if it substantially limits the ability of an individual to perform a major life activity as compared to most people in the general population. *An impairment need not prevent, or significantly or severely restrict, the individual from performing a major life activity in order to be considered substantially limiting. . . .*

29 C.F.R. § 1630.2(j)(1) (2012) (emphasis added).

Neither side mentioned the ADAAA or briefed the issue of whether plaintiff's allegations of disability are sufficient to allege that Ms. Barrett has a disability under the more liberal substantive standard established by the ADAAA.   Rather than attempt to resolve that issue without the benefit of briefing, I will assume, *arguendo*, that plaintiff has adequately alleged that she has a disability or was so perceived, and then resolve the Motion on other grounds. Accordingly, I turn to defendant's remaining arguments.

### B.  Employment Discrimination – Methods of Proof

In general, there are "two avenues" by which a plaintiff may prove intentional employment discrimination *at trial*.  *Hill v. Lockheed Martin Logistics Mgmt., Inc.*, 354 F.3d 277, 284 (4th Cir. 2004) (en banc).  The first is to offer "'direct or indirect'" evidence of discrimination, under "'ordinary principles of proof.'"  *Burns v. AAF-McQuay, Inc.*, 96 F.3d 728, 731 (4th Cir. 1996) (citation omitted).  The second avenue available to the plaintiff is to follow the burden-shifting approach first articulated by the Supreme Court in *McDonnell Douglas Corp.*

*v. Green*, 411 U.S. 792 (1973).[13]  Notably, "the *McDonnell Douglas* test is inapplicable where the plaintiff presents direct evidence of discrimination."  *Trans World Airlines, Inc. v. Thurston*, 469 U.S. 111, 121 (1985).

"To avoid summary judgment" when proceeding under ordinary principles of proof, "'the plaintiff must produce direct evidence of a stated purpose to discriminate and/or [indirect] evidence of sufficient probative force to reflect a genuine issue of material fact.'"  *Rhoads v. FDIC*, 257 F.3d 373, 391 (4th Cir. 2001) (internal citations and quotation marks omitted; alteration in original).  In this case, plaintiff has not alleged or adduced any direct or indirect evidence of discrimination on the basis of ordinary principles of proof.  Accordingly, the focus shifts to the second method of proof: the *McDonnell Douglas* approach.

The *McDonnell Douglas* approach establishes three stages at which the burden of evidentiary production is shifted back and forth between the plaintiff and defendant; however, it does not involve a shifting of the burden of persuasion.  Under the *McDonnell Douglas* approach, the "ultimate burden of persuasion . . . never 'shifts' from the plaintiff" to prove intentional unlawful discrimination.  *Williams v. Cerberonics, Inc.*, 871 F.2d 452, 456 n.2 (4th Cir. 1989) (citation omitted).  *See Desert Palace, Inc. v. Costa*, 539 U.S. 90, 99 (2003) ("[T]he '[c]onventional rul[e] of civil litigation [that] generally appl[ies] in Title VII cases' . . . requires a

---

[13] *McDonnell Douglas* involved a claim of racial discrimination in hiring under Title VII. However, the burden-shifting methodology it endorsed has been adapted for use in cases of alleged discrimination in other statutory contexts.  *See, e.g.*, *Raytheon Co. v. Hernandez*, 540 U.S. 44, 50-52 & n.3 (2003) (applying *McDonnell Douglas* framework in ADA employment discrimination case); *Laber v. Harvey*, 438 F.3d 404, 430 (4th Cir. 2006) (en banc) (applying *McDonnell Douglas* framework to employee's claim of age discrimination under ADEA).  *But see Gross v. FBL Fin. Servs., Inc.*, 557 U.S. 167, 175 n.2 (2009) (observing that the Supreme Court "has not definitively decided whether the evidentiary framework of *McDonnell Douglas* . . . is appropriate in the ADEA context").

plaintiff to prove his case 'by a preponderance of the evidence,' 'using 'direct or circumstantial evidence.'") (internal citations omitted) (alterations in original).

If the employee plaintiff chooses to proceed at trial under the *McDonnell Douglas* approach, the plaintiff must first establish a "prima facie case of discrimination." *Merritt v. Old Dominion Freight Line, Inc.*, 601 F.3d 289, 294 (4th Cir. 2010). Although the precise formulation of the required prima facie showing will vary in "different factual situations," *McDonnell Douglas*, 411 U.S. at 802 n.13, the plaintiff is generally required to show that the employer took adverse action against an employee who was qualified for employment, "under circumstances which give rise to an inference of unlawful discrimination." *Texas Dept. of Cmty. Affairs v. Burdine*, 450 U.S. 248, 253 (1981).[14]

The purpose of the prima facie case requirement is to assist the plaintiff in surmounting two common "evidentiary obstacles": (1) that "'direct evidence of discrimination is likely to be unavailable'"; and (2) that "'the employer has the best access to the reasons that prompted him to fire, reject, discipline or refuse to promote'" the employee. *Smith v. Univ. of North Carolina at Chapel Hill*, 632 F.2d 316, 334 (4th Cir. 1980) (quoting *Loeb v. Textron, Inc.*, 600 F.2d 1003, 1014 (1st Cir. 1979)); *see also Price Waterhouse v. Hopkins*, 490 U.S. 228, 271 (1989) (O'Connor, J., concurring) ("[T]he entire purpose of the *McDonnell Douglas* prima facie case is to compensate for the fact that direct evidence of intentional discrimination is hard to come

---

[14] In *McDonnell Douglas,* the prima facie case of racial discrimination in hiring was formulated as follows, 411 U.S. at 802:

> (i) that [the plaintiff] belongs to a racial minority; (ii) that he applied and was qualified for a job for which the employer was seeking applicants; (iii) that, despite his qualifications, he was rejected; and (iv) that, after his rejection, the position remained open and the employer continued to seek applicants from persons of complainant's qualifications.

by."). Therefore, the plaintiff is not required to present evidence of discriminatory intent in the prima facie case. Moreover, in establishing a prima facie case, the plaintiff is not required to "exclude every hypothetical reason for the defendant's action toward him." *Sledge v. J.P. Stevens & Co.*, 585 F.2d 625, 643 (4th Cir. 1978).

Rather, the prima facie case "serves [the] important function" of "eliminat[ing] the most common nondiscriminatory reasons for the plaintiff's rejection," *Burdine*, 450 U.S. at 253-54, which "are (1) 'lack of qualification' or (2) 'elimination of the job.'" *Plotke v. White*, 405 F.3d 1092, 1099 (10th Cir. 2005) (citation omitted). The rationale of the *McDonnell Douglas* approach is that, if a plaintiff proves a prima facie case, and the defendant submits no evidence of any legitimate basis for its actions, the court or fact finder may "infer discriminatory animus because experience has proved that in the absence of any other explanation it is more likely than not that those actions were bottomed on impermissible considerations." *Furnco Const. Corp. v. Waters*, 438 U.S. 567, 579-80 (1978).

Under the *McDonnell Douglas* approach, if a plaintiff establishes at trial, by a preponderance of the evidence, a prima facie case of unlawful discrimination, "a presumption of illegal discrimination arises, and the burden of production shifts to the employer" to produce evidence of a legitimate, non-discriminatory reason for its adverse employment action. *Hoyle v. Freightliner, LLC*, 650 F.3d 321, 336 (4th Cir. 2011). "If the defendant carries this burden of production, the presumption raised by the prima facie case is rebutted." *Burdine*, 450 U.S. at 255. In that circumstance, "the *McDonnell Douglas* framework—with its presumptions and burdens—is no longer relevant," and "simply drops out of the picture." *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 510-11 (1993). Stated another way, if the employer produces evidence that

could persuade a fact finder that it had a legitimate, non-discriminatory reason for its actions, "the defendant has done everything that would be required of [it] if the plaintiff had properly made out a *prima facie* case," and therefore, "whether the plaintiff really did so is no longer relevant." *U.S. Postal Serv. Bd. of Governors v. Aikens*, 460 U.S. 711, 715 (1983).

When the defendant meets its burden of production, the plaintiff must then prove, by a preponderance of evidence, "that the proffered reason was not the true reason for the employment decision," and that the plaintiff "has been the victim of intentional discrimination." *Burdine*, 450 U.S. at 256. *See also Adams v. Trustees of Univ. of North Carolina-Wilmington*, 640 F.3d 550, 560 (4th Cir. 2011) ("[I]n demonstrating the Defendants' decision was pretext, [Plaintiff] had to prove '*both* that the reason was false, *and* that discrimination was the real reason.'") (quoting *Jiminez v. Mary Washington Coll.*, 57 F.3d 369, 378 (4th Cir. 1995)) (emphasis in original).

On the other hand, if the defendant fails to meet the burden of producing "evidence which, *taken as true*, would *permit* the conclusion that there was a nondiscriminatory reason for the adverse action," and the plaintiff has proved a prima facie case, "the court must award judgment to the plaintiff as a matter of law." *St. Mary's Honor Ctr.*, 509 U.S. at 509 (emphasis in original). This is because a legal presumption of intentional discrimination has been established. *Id.* at 510 n.3.[15] *See Burdine*, 450 U.S. at 255 n.8 ("[T]he allocation of burdens and

---

[15] In *St. Mary's Honor Center*, the Supreme Court concluded that, where the employer meets its burden of producing evidence of legitimate reasons for its adverse action, but the fact-finder disbelieves all of the employer's proffered reasons, judgment for the plaintiff is permitted, but not mandatory. The Court explained:

> The factfinder's disbelief of the reasons put forward by the defendant (particularly if disbelief is accompanied by a suspicion of mendacity) may, together with the elements of the prima facie case, suffice to show intentional discrimination.

the creation of a presumption by the establishment of a prima facie case is intended progressively to sharpen the inquiry into the elusive factual question of intentional discrimination.").

I pause to set out the standards for a prima facie claim under the *McDonnell Douglas* approach for each of plaintiff's wrongful termination claims, under the ADA, the ADEA, and Title VII.

In the context of a claim under Title I of the ADA for wrongful termination on the basis of disability, a plaintiff's prima facie case consists of "five things: [1] [the plaintiff] was disabled; [2] she was otherwise qualified to perform the essential functions of her job; [3] she suffered an adverse employment action; [4] her employer knew or had reason to know of her disability; and [5] either the position remained open or a non-disabled person replaced her." *Gecewicz v. Henry Ford Macomb Hosp. Corp.*, 683 F.3d 316, 321 (6th Cir. 2012).[16]

---

> Thus, rejection of the defendant's proffered reasons will *permit* the trier of fact to infer the ultimate fact of intentional discrimination, and . . . upon such rejection, "[n]o additional proof of discrimination is *required*. . . ." But . . . holding that rejection of the defendant's proffered reasons *compels* judgment for the plaintiff disregards the fundamental principle . . . that a presumption does not shift the burden of proof, and ignores our repeated admonition that the . . . plaintiff at all times bears the "ultimate burden of persuasion."

509 U.S. at 511 (internal citations and footnote omitted; emphasis in original).

[16] In some Fourth Circuit cases, the prima facie case under the ADA has been formulated as follows: "(1) [Plaintiff] 'was a qualified individual with a disability'; (2) he 'was discharged'; (3) he 'was fulfilling h[is] employer's legitimate expectations at the time of discharge'; and (4) 'the circumstances of h[is] discharge raise a reasonable inference of unlawful discrimination.'" *Reynolds*, *supra*, 701 F.3d at 150 (citation omitted). This formulation is consistent with the formulation from *Gecewicz*, quoted in the text. However, the *Gecewicz* formulation expands the fourth element into separate (and more specific) fourth and fifth elements, so as to specify *how* "'the circumstances of [plaintiff's] discharge raise a reasonable inference of unlawful discrimination,'" *id.*, which is helpful to a court that must apply the standard.

Some other circuits have provided a different formulation of the prima facie case under the ADA: "A prima facie case of disability discrimination under the ADA requires that the Employee (1) be a disabled person as defined by the ADA; (2) is qualified, with or without

Under the ADEA, which prohibits employment discrimination "because of . . . age," 29

U.S.C. § 623(a)(1), against "individuals who are at least 40 years of age," *id.* § 631(a), the prima

facie case of wrongful termination has been formulated as follows:

> [The plaintiff] must show that (1) he is a member of the protected class [*i.e.*, 40 or older]; (2) he was qualified for the job and met [his employer's] legitimate expectations; (3) he was discharged despite his qualifications and performance; and (4) following his discharge, he was replaced by a substantially younger individual with comparable qualifications.

*Warch v. Ohio Cas. Ins. Co.*, 435 F.3d 510, 513 (4th Cir. 2006).  As noted, the Supreme Court

"has not definitively decided whether the evidentiary framework of *McDonnell Douglas* . . . is

appropriate in the ADEA context." *Gross*, *supra*, 557 U.S. at 175 n.2.  But, the *McDonnell*

*Douglas* approach has been applied to ADEA claims in the Fourth Circuit.  It also bears noting

that the ADEA does not provide for mixed-motive liability; a plaintiff under the ADEA "must

prove that age was the 'but-for' cause of the employer's adverse decision." *Id.* at 176.

Finally, "[t]o establish a prima facie case of gender discrimination" under Title VII, "a

plaintiff must show: '(1) membership in a protected class; (2) satisfactory job performance; (3)

adverse employment action . . . ; and (4) that similarly-situated employees outside the protected

class received more favorable treatment.'"  *Gerner v. County of Chesterfield*, 674 F.3d 264, 266

(4th Cir. 2012) (quoting *White v. BFI Waste Servs., LLC*, 375 F.3d 288, 295 (4th Cir. 2004))

(ellipsis in *Gerner*).

In this case, defendant argues that plaintiff fails to establish a prima facie case of

---

reasonable accommodation, to perform the essential functions of the job held or desired; and (3) suffered discrimination by an employer or prospective employer because of that disability." *EEOC v. Picture People, Inc.*, 684 F.3d 981, 985 (10th Cir. 2012); *see, e.g.*, *Kallail v. Alliant Energy Corp. Servs., Inc.*, 691 F.3d 925, 930 (8th Cir. 2012).  This formulation seems to amount to a demonstration of disability discrimination under ordinary principles of proof, rather than a "prima facie case" within the meaning of the *McDonnell Douglas* approach.

employment discrimination under the ADEA or Title VII.  FMC concedes that Ms. Barrett is within a protected class under both statutes, given that she is over the age of 40 and a woman, so as to satisfy the first element of a prima facie case.  But, FMC argues that plaintiff has failed to establish that she was satisfactorily performing her duties or that the circumstances surrounding her termination give rise to an inference of discrimination.[17]

Although defendant's argument is not entirely clear in this respect, it appears that FMC asserts this contention as a challenge to plaintiff's pleading, under a Rule 12(b)(6) standard.  If so, defendant's contention lacks merit.  The *McDonnell Douglas* scheme was created to resolve "the proper order and nature of proof" of discrimination *at trial*, *McDonnell Douglas*, 411 U.S. at 793, and its relevance outside of the trial context is limited in several important ways.  *See St. Mary's Honor Ctr.*, 509 U.S. at 521 (stating that the *McDonnell Douglas* scheme "is a *procedural* device, designed only to establish an order of proof and production") (emphasis in original).

Of particular import here, the Supreme Court held, in *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 515 (2002), that "an employment discrimination plaintiff need not plead a prima facie case of discrimination" under *McDonnell Douglas* to survive a motion to dismiss.  *Accord Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 569-70 (2007).  In *Swierkiewicz*, 534 U.S. at 514, a unanimous Supreme Court ruled that the plaintiff's complaint of employment discrimination on the basis of age and national origin under the ADEA and Title VII stated a claim upon which relief could be granted where it "detailed the events leading to his termination, provided relevant

---

[17] These arguments would pertain equally to the ADA claim in Count I, but FMC does not advance them with respect to the ADA.  Perhaps this is due to FMC's position that plaintiff fails to establish even the first element of a prima facie ADA claim, *i.e.*, that she has a disability.

dates, and included the ages and nationalities of at least some of the relevant persons involved with his termination." This was enough, the Court said, to "give respondent fair notice of what [plaintiff's] claims are and the grounds upon which they rest," and to "state claims upon which relief could be granted under Title VII and the ADEA." *Id.* Plaintiff's complaint provides a degree of factual detail that is analogous to the complaint in *Swierkiewicz.* Accordingly, even if plaintiff's Complaint does not allege a prima facie case of employment discrimination under *McDonnell Douglas*, it is not subject to dismissal under Rule 12(b)(6).

Moreover, assuming that defendant's contentions arise as arguments for summary judgment under Rule 56, the relevance of the prima facie case under *McDonnell Douglas* at the summary judgment stage is limited. The Fourth Circuit has admonished district courts to "'resist the temptation to become so entwined in the intricacies of the [*McDonnell Douglas*] proof scheme that they forget that the scheme exists solely to facilitate determination of the ultimate question of discrimination *vel non*.'" *Merritt*, 601 F.3d at 295 (quoting *Proud v. Stone*, 945 F.2d 796, 798 (4th Cir. 1991)) (alterations in *Merritt*; internal quotation marks omitted). The Court has observed that, "[n]otwithstanding the intricacies of proof schemes, the core of every [discrimination] case remains the same, necessitating resolution of 'the ultimate question of discrimination *vel non*,'" and that, "[b]y the time of appeal especially, the issue boils down to whether the plaintiff has presented a triable question of intentional discrimination." *Merritt*, *supra*, 601 F.3d at 294-95 (citation omitted). And, on several occasions where the employer proffered evidence of a legitimate reason for its adverse action in its motion for summary judgment, the Fourth Circuit has assumed, without deciding, that the plaintiff established a prima facie case. *See, e.g.*, *Holland v. Washington Homes, Inc.*, 487 F.3d 208, 218 (4th Cir. 2007);

*Hux v. City of Newport News*, 451 F.3d 311, 314 (4th Cir. 2006); *Laber v. Harvey*, 438 F.3d 404, 432 (4th Cir. 2006) (en banc); *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310, 319-20 (4th Cir. 2005); *Rowe v. Marley Co.*, 233 F.3d 825, 829 (4th Cir. 2000); *see also Geist v. Gill/Kardash P'ship*, 671 F. Supp. 2d 729, 736-37 (D. Md. 2009); *Spriggs v. Pub. Serv. Comm'n*, 197 F. Supp. 2d 388, 394 (D. Md. 2002).

The Court of Appeals for the District of Columbia Circuit has bluntly stated that, in considering an employer's motion for summary judgment, "the prima facie case is a largely unnecessary sideshow" in the vast majority of cases, and that "judicial inquiry into the prima facie case is usually misplaced." *Brady v. Office of Sergeant at Arms*, 520 F.3d 490, 493-94 (D.C. Cir. 2008).  Writing for that court, Judge Kavanaugh explained, *id.* (emphasis in original):

> [B]y the time the district court considers an employer's motion for summary judgment . . . the employer ordinarily will have asserted a legitimate, non-discriminatory reason for the challenged decision—for example, through a declaration, deposition, or other testimony from the employer's decisionmaker. That's important because once the employer asserts a legitimate, non-discriminatory reason, the question whether the employee actually made out a prima facie case is "no longer relevant" and thus "disappear[s]" and "drops out of the picture." *St. Mary's Honor Ctr.*, 509 U.S. at 510; *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 143 (2000).
>
> &ast; &ast; &ast;
>
> Lest there be any lingering uncertainty, we state the rule clearly: In a [discrimination] suit where an employee has suffered an adverse employment action and an employer has asserted a legitimate, non-discriminatory reason for the decision, the district court need not—*and should not*—decide whether the plaintiff actually made out a prima facie case under *McDonnell Douglas*. Rather, in considering an employer's motion for summary judgment . . . in those circumstances, the district court must resolve one central question: Has the employee produced sufficient evidence for a reasonable jury to find that the employer's asserted non-discriminatory reason was not the actual reason and that the employer intentionally discriminated against the employee on the basis of [a protected classification]?

In this case, in addition to arguing that plaintiff has not established a prima facie case

under the *McDonnell Douglas* standard, FMC has proffered copious evidence of a legitimate, performance-based reason for her termination.  FMC has "carrie[d] [its] burden of production," as to the second stage of the *McDonnell Douglas* burden-shifting scheme, and so "the presumption raised by the prima facie case," if any, has been "rebutted."  *Burdine*, *supra*, 450 U.S. at 255.  Put another way, FMC "has done everything that would be required of [it] if the plaintiff had properly made out a *prima facie* case," and therefore, "whether the plaintiff really did so is no longer relevant."  *Aikens*, *supra*, 460 U.S. at 715.

Therefore, I assume, *arguendo*, that plaintiff established a prima facie case under the first step of the *McDonnell Douglas* scheme.  Defendant has satisfied its burden of production under the second step, and so the focus shifts to the third step under *McDonnell Douglas*: plaintiff must present evidence or argument from which a fact-finder could conclude that defendant's proffered legitimate reason for her termination is pretextual, and that unlawful discrimination is the true reason.  *See, e.g.*, *Adams*, *supra*, 640 F.3d at 560.  Plaintiff has utterly failed to do so.

FMC has presented detailed and uncontroverted evidence, drawn from its human resources records and internal emails, documenting plaintiff's poor performance.  Beginning in 2008, Ms. Barrett received counseling from her supervisors for her unsatisfactory performance as a social worker.[18]  This poor performance continued into 2009, when Ms. Barrett was counseled for lack of professionalism, failure to complete patient insurance forms in a timely manner, and lack of team work.  In October 2009, plaintiff's managers at FMC prepared a draft "Developmental Action Plan" for plaintiff addressing these deficiencies.  *See* Ex.12 to Motion

---

[18]  Defendant does not directly explain Ms. Barrett's positive performance evaluation in 2009.  However, exhibits submitted by plaintiff indicated that Mr. Nwachinemere stated to plaintiff, during the meeting on October 5, 2009, that her 2009 evaluation had been "overrated."  Ex.D to Complaint (ECF 1-1 at 16).

(ECF 27-13).   FMC deferred placing plaintiff on the DAP, but her performance deficiencies continued.

For instance, defendant has submitted an email chain from late October 2009, between Kathy Lijewski, RN, the Clinical Manager of FMC's White Marsh dialysis center; Carol Miller, FMC's Northeast Maryland Regional Director of Operations; and Rochelle Johnson in FMC's Human Resources department, discussing repeated warnings to plaintiff not to fax patient insurance forms until Ms. Barrett, as the patient's social worker, had reviewed and signed them. *See* Ex.18 to Motion (ECF 27-19).   Defendant's exhibits also show that plaintiff chronically failed to attend important monthly clinic meetings, without explanation, for the months of July through October 2009.   *See* Motion at 7; *see also* Ex.10 & Ex. 19 to Motion (ECF 27-11 & 27-20).

In April 2010, plaintiff was placed on a sixty-day DAP, which included biweekly meetings with supervisors to discuss her progress.   *See* Motion at 7.   Despite the meetings and the counseling sessions, Ms. Barrett's performance failed to improve.   FMC continued to receive complaints, including from the Medical Director and external insurance contacts, about Ms. Barrett's unprofessional behavior and failure properly to submit medical forms, despite her indicating otherwise to her supervisor.   As a result, the DAP was extended for an additional 30 days, to July 30, 2010.   Following that extension, on July 13, 2010, Ms. Barrett was issued a final written warning that specifically stated the areas in which she needed to improve.   *See* Ex.22 to Motion (ECF 27-23).   The DAP was extended again, until August 11, 2010, but plaintiff showed no further improvement.   Her employment was terminated on August 13, 2010. Motion at 7-8.

In her nine-page Opposition, plaintiff insists that she "did not fail to meet her employer's expectations and was in fact performing better than her coworkers who were not subjected to an adverse employment action." Opposition at 7.  But, she provides little in the way of evidence or argument to support her claim.  Ms. Barrett points to her score of 930/1000 on her 2009 annual performance review.   But, this high score preceded plaintiff's documented decline in performance.  As defendant points out, *see* Reply at 7, plaintiff admits in her own Complaint that she scored only 490/1000 on her annual performance review in April 2010.  *See* Complaint ¶ 26. And yet, she has not presented evidence to suggest that the decline in her score in 2010 was falsified or pretextual.  Notably, plaintiff has not even submitted her own affidavit to place her "side of the story" into evidence.  Nor has she requested the opportunity for discovery pursuant to Fed. R. Civ. P. 56(d).

More to the point, even if FMC's assessment of plaintiff's performance was unfounded or unfair, plaintiff has presented nothing that even hints that her supervisors' reason for assessing her performance so poorly was her disability, age, or sex.  "The crucial issue in a Title VII action," or an employment discrimination action under the ADA or ADEA, "is an unlawfully discriminatory motive for a defendant's conduct, not the wisdom or folly of its business judgment." *Jiminez v. Mary Washington Coll.*, 57 F.3d 369, 383 (4th Cir.), *cert. denied*, 516 U.S. 944 (1995).   It is not the province of a federal court to determine whether FMC's assessment of plaintiff's job performance was "'wise, fair, or even correct,'" *Hawkins v. PepsiCo, Inc.*, 203 F.3d 274, 279 (4th Cir.) (citation omitted), *cert. denied*, 531 U.S. 875 (2000), so long as the employer had no unlawfully discriminatory basis.  In short, an employment discrimination claim "'is not a vehicle for substituting the judgment of a court for that of the

employer.'" *DeJarnette v. Corning, Inc.*, 133 F.3d 293, 298-99 (4th Cir. 1998) (citation omitted).

As outlined earlier, once an employer has proffered a non-discriminatory reason for its employment decision, the burden of production shifts back to the plaintiff to establish that the proffered reason is a pretext.  The plaintiff may do so by presenting evidence that directly contradicts the employer's proffered justification, "or by amassing circumstantial evidence that otherwise undermines the credibility of the employer's stated reasons." *Heiko v. Colombo Sav. Bank, F.S.B.*, 434 F.3d 249, 259 (4th Cir. 2006).  At that juncture, "a plaintiff's prima facie case, combined with sufficient evidence to find that the employer's asserted justification is false, may permit the trier of fact to conclude that the employer unlawfully discriminated." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 148 (2000).  But, the plaintiff may not rely solely "on his [or her] 'own assertions of discrimination'" to persuade a trier of fact. *Adam v. Trs. of Univ. of N.C.-Wilmington*, 640 F.3d 550, 560 (4th Cir. 2011) (citation omitted).  When a plaintiff fails "to present any other evidence—beyond baseless speculation—that [the employer's] stated reason was pretextual, [the] trier of fact 'would be hard-pressed to conclude that [the plaintiff] established pretext.'" *Holland v. Washington Homes, Inc.*, 487 F.3d 208, 217 (4th Cir. 2007).  And, when a plaintiff has presented nothing sufficient to raise a material issue of fact to place before the fact finder, her claim will not survive a motion for summary judgment.

To be sure, the Supreme Court has said that a "factfinder's disbelief of the reasons put forward by the defendant (particularly if disbelief is accompanied by a suspicion of mendacity) may, together with the elements of the prima facie case, suffice to show intentional discrimination." *St. Mary's Honor Ctr.*, 509 U.S. at 511.  Thus, "rejection of the defendant's

proffered reasons will *permit* the trier of fact to infer the ultimate fact of intentional discrimination, and . . . upon such rejection, '[n]o additional proof of discrimination is *required* . . . .'" *Id.* (emphasis in *St. Mary's Honor Center*) (citation omitted).  Accordingly, if a plaintiff presents evidence or legitimate argument that could persuade a rational fact finder to disbelieve the defendant's justification for its employment decision, summary judgment is not appropriate. But here, plaintiff has offered absolutely no basis, in evidence or argument, for a fact finder to disbelieve FMC's proffered justification for its adverse employment decision.  Indeed, in her Opposition to the Motion, plaintiff has not addressed FMC's asserted basis for its employment decision at all.  Because Ms. Barrett has failed to produce any evidence that could disprove FMC's legitimate, non-discriminatory reasons for terminating her employment, FMC is entitled to summary judgment with respect to Counts I, II, and III, to the extent that those counts allege unlawful termination on the basis of disability, age, or sex.

Moreover, summary judgment in favor of defendant as to Counts I, II, and III is also appropriate to the extent that plaintiff claims the disparity in work hours between plaintiff and Mr. Nelson constituted an adverse employment action, which could give rise to liability short of termination.  It appears doubtful that Mr. Nelson is a similarly situated comparator to plaintiff, given his higher level of licensure and greater experience.  Nevertheless, even if comparison between Mr. Nelson and plaintiff is appropriate, plaintiff has failed to generate an issue of material fact as to whether the disparity in hours was an actionable adverse employment action.

"An adverse employment action is a discriminatory act that 'adversely affect[s] the terms, conditions, or benefits of the plaintiff's employment.'" *Holland v. Washington Homes, Inc.*, 487 F.3d 208, 219 (4th Cir. 2007), *cert. denied*, 552 U.S. 1102 (2008).  Put another way, an adverse

employment action "is one that 'constitutes a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits.'"  *Hoyle*, *supra*, 650 F.3d at 337 (quoting *Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 761 (1998)).  In some circumstances, a reduction in hours may constitute an adverse employment action.  *See, e.g.*, *Hill v. Potter*, 625 F.3d 998, 1001 (7th Cir. 2010).  But here, plaintiff has not controverted defendant's assertion, buttressed by payroll records, that plaintiff's reduction in hours did not cause a reduction in her pay. Typically, an adverse employment action has been found in cases of "discharge, demotion, decrease in pay or benefits, loss of job title or supervisory responsibility, or reduced opportunities for promotion." *Boone v. Goldin*, 178 F.3d 253, 255 (4th Cir. 1999).

Where the reduction in plaintiff's hours had no tangible effect on her compensation, the Court cannot conclude that plaintiff suffered an adverse employment action.  "[C]onduct 'short of ultimate employment decisions can constitute adverse employment action', [but] there . . . must be a 'tangible effect on the terms and conditions of employment.'"  *Geist v. Gill/Kardash P'ship, LLC*, 671 F. Supp. 2d 729, 737 n.6 (D. Md. 2009) (quoting *James v. Booz-Allen & Hamilton, Inc.*, 368 F.3d 371, 377 (4th Cir.), *cert. denied*, 543 U.S. 959 (2004)).

## C.  Retaliation

Plaintiff also fails to state a claim of retaliation.  "The elements of a prima facie retaliation claim under Title VII are: (1) engagement in a protected activity; (2) adverse employment action; and (3) a causal link between the protected activity and the employment action." *Coleman v. Md. Court of Appeals*, 626 F.3d 187, 190 (4th Cir. 2010), *aff'd*, ___ U.S. ___, 132 S. Ct. 1327 (2012).  However, as in the *McDonnell Douglas* context, "[i]f a plaintiff

'puts forth sufficient evidence to establish a prima facie case of retaliation' and a defendant 'offers a non-discriminatory explanation' for [her] termination, the plaintiff 'bears the burden of establishing that the employer's proffered explanation is pretext.'" *Hoyle*, *supra*, 650 F.3d at 337 (quoting *Yashenko v. Harrah's Casino*, 446 F.3d 541, 551 (4th Cir. 2006)).

With respect to the causation element, ordinarily there must be "some degree of temporal proximity to suggest a causal connection." *Constantine v. Rectors & Visitors of George Mason Univ.*, 411 F.3d 474, 501 (4th Cir. 2005). Therefore, a "'lengthy time lapse between the [defendant's] becoming aware of the protected activity and the alleged adverse . . . action'" often "'negates any inference that a causal connection exists between the two.'" *Id.* (citation omitted). *But see Lettieri v. Equant, Inc.*, 478 F.3d 640, 650 (4th Cir. 2007) ("In cases where 'temporal proximity between protected activity and allegedly retaliatory conduct is missing, courts may look to the intervening period for other evidence of retaliatory animus.'") (citation omitted).

Conversely, mere temporal proximity is not necessarily enough to create a jury issue as to causation. "'Where timing is the only basis for a claim of retaliation, and gradual adverse job actions began well before the plaintiff had ever engaged in any protected activity, an inference of retaliation does not arise.'" *Francis v. Booz, Allen & Hamilton, Inc.*, 452 F.3d 299, 309 (4th Cir. 2006) (citation omitted) (affirming summary judgment where the "actions that led to [plaintiff's] probation and termination began before her protected activity, belying the conclusion that a reasonable factfinder might find that [defendant's] activity was motivated by [plaintiff's] complaints").

FMC argues that plaintiff has failed to plead a claim of retaliation because she does not allege any plausible causal connection between her termination (or any other alleged adverse

employment action) and her complaint to the MCHR.  Her complaint and her termination occurred approximately ten months apart, and plaintiff presents no direct evidence of a causal connection between them.

Moreover, in response to defendant's arguments, plaintiff contends only that she was terminated for using FMC's internal human resources complaint phone line (the "EAR line") to "complain about the bullying and verbal savagery that she was subjected to by her supervisors." Opposition at 9.  But, to support a claim of retaliation under Title VII (the only statute under which plaintiff has alleged retaliation), the plaintiff must show that she undertook an activity that is protected under Title VII's anti-retaliation provision. "Title VII's anti-retaliation provision only protects activities pertaining to complaints or participation in investigations relating to discrimination on the basis of race, color, religion, sex, or national origin." *Fontell v. MCGEO UFCW Local 1994*, No. AW-09-2526, 2010 WL 3086498, *13 (D. Md. Aug. 6, 2010), *aff'd*, 410 F. App'x 645 (4th Cir. 2011).

At most, the statute protects against retaliation for an employee's opposition to "employment actions an employee reasonably believes to be unlawful" under Title VII. *Kennedy v. St. Joseph's Ministries, Inc.*, 657 F.3d 189, 199 (4th Cir. 2011).  But, it does not protect an employee's complaints about actions that clearly are not prohibited by federal employment discrimination law.  Although plaintiff's complaint to the MCHR was a protected activity under Title VII, *see King v. Rumsfeld*, 328 F.3d 145, 151 (4th Cir.), *cert. denied*, 540 U.S. 1073 (2003), her internal human resources complaints about workplace grievances unconnected to alleged unlawful discrimination were not.  *See, e.g., Barber v. CSX Distribution Servs., Inc.*, 68 F.3d 694, 701 (3d Cir. 1995) (holding that complaint concerning "unfair treatment in general" was not

protected activity under Title VII).   In other words, Title VII is not "a general whistleblower statute."  *Lightner v. City of Wilmington*, 545 F.3d 260, 264 (4th Cir. 2008).

I agree with defendant that plaintiff has failed to assert a plausible causal connection between her termination and her MCHR complaint.   But, even assuming plaintiff had made out a prima facie case of retaliation, she has failed to proffer evidence to rebut FMC's asserted legitimate basis for her termination, already discussed, so as to demonstrate that FMC's asserted basis was a pretext for unlawful retaliation.   "Workers are shielded from retaliation on account of their assertion of rights protected under Title VII.   But a complaining worker is not thereby insulated from the consequences of . . . poor performance."  *Ziskie v. Mineta*, 547 F.3d 220, 229 (4th Cir. 2008).   Accordingly, summary judgment for FMC is warranted as to Count IV as well.

## D.  Hostile Work Environment

"To survive summary judgment" as to a hostile work environment claim, a plaintiff must provide evidence of harassment by her co-workers, which a reasonable jury could find was "'(1) unwelcome; (2) based on [a protected classification]; and (3) sufficiently severe or pervasive to alter the conditions of employment and create an abusive atmosphere,'" and must also show "'that there is some basis for imposing liability' for the harassment on the employer."  *EEOC v. Xerxes Corp.*, 639 F.3d 658, 668 (4th Cir. 2011) (quoting *Spriggs v. Diamond Auto Glass*, 242 F.3d 179, 183-84 (4th Cir. 2001)).   In *EEOC v. Sunbelt Rentals, Inc.*, 521 F.3d 306, 315-16 (4th Cir. 2008), the Fourth Circuit elucidated the "severe or pervasive" prong:

> The "severe or pervasive" element of a hostile work environment claim "has both subjective and objective components."  *Ocheltree v. Scollon Prods., Inc.*, 335 F.3d 325, 333 (4th Cir. 2003) (en banc) (citing *Harris* [*v. Forklift Sys., Inc.*], 510 U.S. [17,] 21-22 [(1993)].   First, the plaintiff must show that he "subjectively perceive[d] the environment to be abusive."  *Harris*, 510 U.S. at 21-22.   Next, the plaintiff must demonstrate that the conduct was such that "a

reasonable person in the plaintiffs position" would have found the environment objectively hostile or abusive. *Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75, 81-82 (1998). . . .

This objective inquiry "is not, and by its nature cannot be, a mathematically precise test." *Harris*, 510 U.S. at 22. Rather, when determining whether the harassing conduct was objectively "severe or pervasive," we must look "at all the circumstances," including "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Id.* at 23; *Ocheltree*, 335 F.3d at 333. "[N]o single factor is" dispositive, *Harris*, 510 U.S. at 23, as "[t]he real social impact of workplace behavior often depends on a constellation of surrounding circumstances, expectations, and relationships which are not fully captured by a simple recitation of the words used or the physical acts performed," *Oncale*, 523 U.S. at 81-82.

While this standard surely prohibits an employment atmosphere that is "permeated with discriminatory intimidation, ridicule, and insult," *Harris*, 510 U.S. at 21 (internal quotations omitted), it is equally clear that Title VII does not establish a "general civility code for the American workplace," *Oncale*, 523 U.S. at 80. This is because, in order to be actionable, the harassing "conduct must be [so] extreme [as] to amount to a change in the terms and conditions of employment." *Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1998). Indeed, as the Court observed, "simple teasing, offhand comments, and isolated incidents (unless extremely serious) will not amount to discriminatory changes in the terms and conditions of employment." *Id.* (internal quotations and citations omitted); *see also Clark County Sch. Dist. v. Breeden*, 532 U.S. 268, 270-71 (2001).

Our circuit has likewise recognized that plaintiffs must clear a high bar in order to satisfy the severe or pervasive test. Workplaces are not always harmonious locales, and even incidents that would objectively give rise to bruised or wounded feelings will not on that account satisfy the severe or pervasive standard. Some rolling with the punches is a fact of workplace life. Thus, complaints premised on nothing more than "rude treatment by [coworkers]," *Baqir v. Principi*, 434 F.3d 733, 747 (4th Cir. 2006), "callous behavior by [one's] superiors," *Bass v. E.I. DuPont de Nemours & Co.*, 324 F.3d 761, 765 (4th Cir. 2003), or "a routine difference of opinion and personality conflict with [one's] supervisor," *Hawkins v. PepsiCo, Inc.*, 203 F.3d 274, 276 (4th Cir. 2000), are not actionable . . . .

Although plaintiff complains of a "hostile work environment" in her Complaint, *see* Complaint ¶ 52, the "hostile" actions alleged are simply routine incidents of workplace discipline

or, at most, regrettable instances of rude behavior from coworkers.   Plaintiff provides no allegation or evidence, direct or indirect, that links any of the "hostile" conduct to her disability, age, or sex.   Even if the actions of which she complains were unwarranted, unwelcome, or unfair, federal employment discrimination law does not "'declare unlawful every arbitrary and unfair employment decision.'"   *Balazs v. Liebenthal*, 32 F.3d 151, 159 (4th Cir. 1994) (citation omitted).   Nor does federal employment discrimination law serve as "a general civility code for the American workplace."   *Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75, 80 (1998).

As FMC persuasively argues in its Motion, plaintiff has failed to allege any facts suggesting that the actions of plaintiff's supervisors and co-workers were based on a protected classification or even approached the level of severe and pervasive abusive conduct that can give rise to liability.   In her Opposition, plaintiff does not present any argument at all in support of her hostile work environment claim.   In sum, it is abundantly clear that defendant is entitled to summary judgment with respect to plaintiff's hostile work environment claims.

### Conclusion

For the foregoing reasons, plaintiff's Complaint will be dismissed, with prejudice, to the extent that it purports to allege a cause of action under Title VII for discrimination on the basis of marital status.   Summary judgment will otherwise be granted in favor of FMC.   An Order implementing my ruling follows.


Date:   March 19, 2013                          _____/s/_____
                                                Ellen Lipton Hollander
                                                United States District Judge